BOERSCH SHAPIRO LLP
David W. Shapiro (CA Bar No. 219265)
Dshapiro@boerschshapiro.com
Martha Boersch (CA Bar No. 126569)
Mboersch@boerschshapiro.com
Lara Kollios (CA Bar No. 235395)
Lkollios@boerschshapiro.com
235 Montgomery Street, Suite 835
San Francisco, CA 94104
Telephone: (415) 500-6640

Attorneys for Defendant
DAVID ALAN HESLOP

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>GAR EDWARD KOVALL, DAVID ALAN HESLOP, PAUL PHILLIP BARDOS, AND PEGGY ANNE SHAMBAUGH,<br><br>          Defendants. | Case No. CR-12-441(A)-MWF<br><br>DEFENDANT DAVID ALAN HESLOP'S MOTION TO DISMISS |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

  INTRODUCTION AND SUMMARY OF ARGUMENTS ....................... 1

  THE INDICTMENT'S FACTUAL ALLEGATIONS ............................. 3

    Persons and Entities Charged In The Indictment ......................... 3

    The Transactions Charged In The Indictment ............................. 6

    The Checks Alleged in the Indictment ....................................... 7

JURISDICTION ......................................................................................... 8

ARGUMENT .............................................................................................. 8

  POINT ONE ....................................................................................... 8

  SECTION 666 REQUIRES THAT AN ALLEGED IMPROPER PAYMENT BE
  MADE IN CONNECTION WITH A TRANSACTION OF THE TRIBAL
  GOVERNMENT RECEIVING FEDERAL FUNDS

  POINT TWO ................................................................................... 10

  RULE 12 AUTHORIZES A HEARING WITH EVIDENCE ON THIS MOTION

  POINT THREE ............................................................................... 12

  THE TRANSACTIONS THAT UNDERLIE THE CHARGES AGAINST HESLOP
  FOR VIOLATING SECTION 666 WERE NOT TRANSACTIONS WITH THE
  ENTITY THAT RECEIVED FEDERAL FUNDS

  POINT FOUR ................................................................................. 17

  THE INDICTMENT FAILS TO ALLEGE A CONNECTION BETWEEN
  HESLOP'S ALLEGED INFLUENCE AND ANY ALLEGED IMPROPER
  PAYMENT

  POINT FIVE ................................................................................... 18

  THE INDICTMENT FAILS TO ALLEGE THAT HESLOP  WAS AN AGENT OF
  THE TRIBAL GOVERNMENT

  POINT SIX ...................................................................................... 22

  THE MONEY LAUNDERING COUNTS MERGE INTO THE UNDERLYING
  STATE OFFENSE AND FAIL TO ESTABLISH FEDERAL JURISDICTION ...... 22

CONCLUSION ......................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Vantage Co., Inc. v. Table Mountain Rancheria*,
    292 F.3d 1091 (9th Cir. 2002) .................................................................... 13

*Bolssen v. Unum Life Ins. Co. of America*,
    629 F. Supp. 2d 878 (E.D. Wisc. 2009) ..................................................... 15

*Chao v. Spokane Tribe of Indians*,
    2008 WL 4443821 (Wash. Sept. 24, 2008) ................................................ 15

*Cleveland v. United States*,
    531 U.S. 12 (2000) ....................................................................................... 16

*CrossTalk Prods., Inc. v. Jacobson*,
    65 Cal. App. 4th 631 (1998) ........................................................................ 25

*Flores v. Evergreen at San Diego, LLC*,
    148 Cal. App. 4th 581 (2007) ...................................................................... 19

*Marceau v. Blackfeet Hous. Auth.*,
    455 F.3d 974 (9th Cir. 2006) ....................................................................... 13

*Mescalero Apache Tribe v. Jones*,
    411 U.S. 145 (1973) ..................................................................................... 13

*Parker Drilling Co. v. Metlakatla Indian Cmty.*,
    451 F. Supp. 1127 (D. Alaska 1978) ........................................................... 13

*Reich v. Mashantucket Sand & Gravel*,
    95 F.3d 174 (2d Cir. 1996) .......................................................................... 15

*Russell v. United States*,
    369 U.S. 749 (1962) ..................................................................................... 21

*San Manuel Indian Bingo & Casino v. N.L.R.B.*,
    475 F.3d 1306 (D.C. Cir. 2007) ................................................................... 15

*Seaport Loan Prod., LLC v. Lower Brule Cmty. Dev. Enter. LLC*,
    41 Misc. 3d 1218(A) (N.Y. Sup. Ct. 2013) ................................................. 16

*Somerlott v. Cherokee Nation Distributors, Inc.*,
    686 F.3d 1144 (10th Cir. 2012) ................................................................... 16

DEF. HESLOP'S MOTION TO DISMISS
                                              Case No.: CR-12-441(A)-MWF

*United States v. Briddle*,
212 F. Supp. 584 (S.D. Cal. 1962) ............................................................12

*United States v. Bush*,
626 F.3d 527 (9th Cir. 2010) ...................................................................24

*United States v. Cecil,*
608 F.2d 1294 (9th Cir.1979) ..................................................................20

*United States v. Covington*,
395 U.S. 57 (1969) ...................................................................................11

*United States v. Dransfield*,
913 F. Supp. 702 (E.D.N.Y. 1996) ..........................................................12

*United States v. Frega*,
933 F.Supp. 1536 (S.D.Cal.1996) ............................................................10

*United States v. Garrido*,
713 F.3d 985 (9th Cir. 2013) ...................................................................16

*United States v. Gen. Dynamics Corp.*,
644 F. Supp. 1497 (C.D. Cal. 1986) ........................................................12

*United States v. Gonzalez*,
686 F.3d 122 (2d Cir. 2012) ....................................................................20

*United States v. Grasso*,
724 F.3d 1077 (9th Cir. 2013) .................................................................24

*United States v. Hess*,
124 U.S. 483 (1888) .................................................................................21

*United States v. Jenkins*,
490 F.2d 868 (2d Cir. 1973) ....................................................................11

*United States v. Keith*,
605 F.2d 462 (9th Cir. 1979) ...................................................................21

*United States v. Lanier*,
520 U.S. 259 (1997) .................................................................................17

*United States v. Levin*,
973 F.2d 463 (6th Cir. 1992) ...................................................................11

*United States v. Pheaster,*
544 F.2d 353 (9th Cir. 1976) ................................................................11

*United States v. Pirro,*
212 F.3d 86 (2d Cir. 2000) ..................................................................11

*United States v. Santos,*
553 U.S. 507 (2008) ........................................................................3, 23

*United States v. Shipsey,*
190 F.3d 1081 (9th Cir. 1999) .............................................................20

*United States v. Shortt Accountancy Corp.,*
785 F.2d 1448 (9th Cir. 1986) .............................................................11

*United States v. Smith,*
866 F.2d 1092 (9th Cir. 1987) .............................................................10

*United States v. Van Alstyne,*
584 F.3d 803 (9th Cir. 2009) ...............................................................24

*United States v. Westmoreland,*
841 F.2d 572 (5th Cir. 1988) ...............................................................19

*United States v. Whitfield,*
590 F.3d 325 (5th Cir. 2009) ...............................................................19

*United States v. Whitfield,* 590 F.3d 325 (5th Cir. 2009) ............................................10

*United States v. Wyncoop,*
11 F.3d 119 (9th Cir. 1993) ........................................................9, 10, 14

**Statutes**
18 U.S.C.
§ 371 ..............................................................................................23, 25
§ 666 ..........................................................................................passim
§ 981 ....................................................................................................25
§ 982 ....................................................................................................25
§ 1956(c)(7) .........................................................................................22
§ 1961(1) ..............................................................................................22

25 USC § 477 ...........................................................................................4

26 USC § 7871(e) ...................................................................................15

DEF. HESLOP'S MOTION TO DISMISS
Case No.: CR-12-441(A)-MWF

Cal. Penal Code § 641.3 ...................................................................8

Cal. Corp. Code § 17701.04 .........................................................16

Cal. Civ. Code § 2316 ..................................................................19

**TO THE CLERK OF THIS COURT AND ALL COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN that on February 3, 2014 at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 1600 of the United States Courthouse for the Central District of California, 312 North Spring Street, Los Angeles, CA 90012, Defendant Alan Heslop will and hereby does move the Court pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure to dismiss all counts of the indictment against him.

The motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities and attachments, the accompanying Request for Judicial Notice and attached exhibits, the papers filed in this matter, such oral argument and documentary evidence as may be presented at the hearing on the motion, and any other evidence and argument the Court may consider.

This motion is made following conferences of counsel on December 19 and 22, 2013, during which Heslop furnished a draft motion to dismiss to the government, and January 2, 2014.

## MEMORANDUM OF POINTS AND AUTHORITIES
## INTRODUCTION AND SUMMARY OF ARGUMENTS

Alan Heslop moves to dismiss, pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, all of the counts of the superseding indictment alleged against him (Counts 1, 10-24, 35, 37, 42, 44, 47, 48, 50, and 52).  The motion is accompanied by a request to take judicial notice of documents referred to in the indictment, which is proper on a motion to dismiss on the grounds asserted here.

Heslop is charged with conspiracy to violate 18 U.S.C. § 666 (count 1).  He is charged with eight substantive violations of § 666, allegedly because he was an agent of the Twenty-Nine Palms Band of Mission Indians (referred to as the "Tribe" in the indictment and here) and was *rewarded* for influencing the Tribe in "awarding of the Tribe's construction-related contracts" at a gambling casino called the Spotlight 29 Casino (the "Casino") (counts 10-17).  He is charged with seven substantive

DEF. HESLOP'S MOTION TO DISMISS
Case No.: CR-12-441(A)-MWF

violations of § 666, allegedly because he *paid* an agent of the Tribe (Gary Kovall) money for influencing the Tribe in "awarding of the Tribe's construction-related contracts" for the Casino (counts 18-24).  He is charged with one substantive violation of § 666, allegedly because he was *rewarded* for having influenced the Tribe in connection with the purchase of a 47-acre parcel of land (count 35).  Finally, he is charged with seven counts of money laundering for having deposited checks that allegedly represent the proceeds of "commercial bribery" (a California state crime), without any particulars regarding the conduct that allegedly constituted "commercial bribery" (counts 37, 42, 44, 47, 48, 50, and 52).

The indictment fails to invoke this Court's jurisdiction, fails to allege crimes against Heslop, and fails to particularize some of the charges.[1]

First, the Court lacks jurisdiction over all the alleged counts against Heslop under § 666 because that law requires that the alleged improper payment (or reward) be paid in connection with a transaction *by the entity that received the federal funds*. Here, every transaction alleged in the indictment was by a corporation separate and distinct from the tribal governmental entity that received federal funds.

Second, the counts charging Heslop with taking money to influence the Tribe in his role as an alleged agent (counts 1, 10-17, and 35) must be dismissed because these charges fail to allege that Heslop took money for the "recommendation" he made to the Tribe as alleged – to hire Bardos as an owner's representative.  Put another way, Heslop, as an agent, is accused of taking money to influence the Tribe in awarding the

---

[1]  In the original omnibus motion to dismiss, the defendants argued that the § 666 charges failed to state violations because the indictment on its face, and without reference to the evidence provided to the grand jury, failed to allege that (a) Heslop and Kovall were agents of an organization receiving federal funds; (b) the payments were a quid pro quo for the influencing a transaction with the tribal government; and (c) the construction related contracts were not bona-fide transactions excluded from the reach of § 666.  The motion also asserted that the § 666 counts were multiplicitous and the § 1957 counts were unconstitutionally vague.  The arguments raised here are different and some are based on the documents referred to in the indictment, which is permissible on a Rule 12 motion.

DEF. HESLOP'S MOTION TO DISMISS
                                              Case No.: CR-12-441(A)-MWF

construction-related contracts, but the indictment clearly alleges only that Kovall, not Heslop, improperly influenced the Tribe to hire Bardos for those contracts.

Third, the only allegations in the indictment suggesting that Heslop is an agent under § 666 are in paragraphs 5 and 16.  However, the evidence presented to the grand jury plainly states that Echo Trail Holdings, LLC ("ETH"), a California limited liability corporation, not the Tribe, granted the powers ascribed to Heslop, and ETH did not receive federal funds.  Since an agent of a corporation that does not receive federal funds cannot be guilty of a § 666 violation, the counts based on Heslop's alleged status as an agent of ETH do not state a federal crime.  The allegation that the Tribe paid Heslop for working at ETH does not remedy the defect because every check paid to Heslop was paid by ETH, not the Tribe.  In addition, the indictment is defective for failing to particularize how Heslop was an agent of the Tribe.

Finally, the money laundering counts must be dismissed because they fail to invoke the Court's jurisdiction and fail to state an offense; those counts merge with California's commercial bribery statute under Supreme Court and Ninth Circuit case law.  The government may not convert a state crime into a federal money laundering offense where the financial transactions are a central component of the offense, the money laundering statute "radically increases" the punishment possible under the state crime, and there have been no intra-conspirator financial transactions—all of which are true here.  In addition, the money laundering counts are devoid of particulars and violate Heslop's Rule 7 and constitutional rights to fair notice of how he is alleged to have violated California's commercial bribery law.

### THE INDICTMENT'S FACTUAL ALLEGATIONS
#### Persons and Entities Charged In The Indictment
#### The Tribe

The indictment alleges that the Tribe is a Native American tribe "governed by a Tribal Council." (¶ 1).[2]

---

[2]  Paragraph references are to the paragraph numbers of the Indictment, except where references are to Overt Act paragraph numbers.

DEF. HESLOP'S MOTION TO DISMISS
Case No.: CR-12-441(A)-MWF

### The Twenty-Nine Palms Enterprises Corp.

The Tribe "owned Twenty-Nine Palms Enterprises Corp." ("EC"), a corporation that operates the Casino (¶ 2).   EC is a federally chartered corporation under Section 17 of the Indian Reorganization Act of 1934, 25 U.S.C.A. § 477 (hereafter, "Section 17"). (RJN Ex. 1)[3]  EC's Section 17 charter makes clear that EC is a separate legal entity from the Tribe.  It is a corporation "wholly owned by the Tribe, but distinct and separate from the Tribe.  The activities, transactions, obligations, liabilities and property of the Corporation are not those of the Tribe." (*Id.* at 2)  EC is "subject to taxation by the Tribe." (*Id.*)  Its purpose is to engage in business, use tribal resources, and promote the Tribe's economic development. (*Id.* at 3)  EC cannot enter into agreements on behalf of the Tribe, waive the Tribe's sovereign immunity, dispose of Tribe property, release any debts owed to the Tribe, or enter into leases of tribal land. (*Id.* at 5)

### **Gary Kovall**

Gary Kovall is alleged to be a lawyer who represented the Tribe (¶ 3) and, as a lawyer, attended Tribe meetings, negotiated contracts, and advised the Tribal Council "to enter contracts, including contracts between the Tribe" and Heslop and contracts between the Tribe and Paul Bardos.  Kovall also allegedly advised the Tribe to create ETH to use as a vehicle to "purchase real estate on behalf of the Tribe." (¶ 3)  Kovall allegedly had a duty under Rule 3-310 of the California Rules of Professional Conduct to notify the Tribe if he had an adverse interest in any matter "in which he represented the tribe." (¶ 4)[4]

---

In paragraph 5, the indictment states that the Tribe is the "tribal government."  Only a "tribal government" may be the foundation for a § 666 violation, 18 U.S.C. § 666(a)(1) and (2), so the references to the Tribe and to the Tribal Council make the indictment unspecific about the precise entity that received federal money and allegedly entered into the "transactions" that gave rise to violations of law.

[3]  Documents cited in the indictment are the subject of the accompanying motion for judicial notice, are attached as exhibits to that motion.

[4]  This duty of disclosure set out in paragraph 4 of the indictment is also alleged against Heslop in Counts 10 to 17 and 18 to 24 (by incorporation through paragraphs 15 and 17), though the indictment does not allege that Heslop knew a lawyer's disclosure obligations.

**Alan Heslop**

The indictment alleges that Kovall introduced Alan Heslop to the Tribe on an unspecified date, and the Tribe named Heslop as the manager of ETH.  (¶ 5)  The sole fact alleged by the indictment relating to Heslop's "influence" as an agent is that he "recommended" that the Tribe retain Bardos as an "owner's representative."  (¶10(a))  The indictment nowhere asserts that Heslop ever recommended or influenced the Tribe in its decisions to award construction-related contracts to Bardos – the contracts that form the entire basis of the § 666 allegations.

**Echo Trails Holding, LLC**

ETH is a California limited liability corporation; its sole member is the Tribe, which, on July 6, 2006, adopted an Operating Agreement (referred to at ¶5 of the indictment), and appointed Heslop as ETH's initial manager. (RJN Ex. 2 at 5)  "Pursuant to the Operating Agreement of Echo Trail Holdings, LLC," Heslop allegedly had power to manage the "company's assets," including borrowing money for and from the Tribe, granting security interests in the ETH's assets, refinancing ETH's debts hiring employees, among other powers.  (¶ 5)  Thus, the indictment limits itself to Heslop's authority to act for the "company," and says nothing about Heslop's power to act for the Tribe.  The manager's authority expressly did not include borrowing or acquiring any assets "in excess of $1000," among other limits. (RJN Ex. 2 at 6)  Heslop was not paid by the Tribe for his work at ETH; he was paid by ETH.  (RJN Ex. 26)

**Paul Bardos**

The indictment identifies Paul Bardos as a licensed general contractor and owner of Bardos Construction, Inc., Cadmus Construction Co., and Cadmus Construction, Inc.  (¶ 6)  According to the indictment, in September 2006, Heslop and Kovall introduced Bardos to the Tribe and recommended that the Tribe hire Bardos as the Tribe's "owner's representative" in connection with construction at the Casino

(Overt Acts ¶ 1).  The Tribe is alleged to have entered into a contract with Bardos to act as the owner's representative on February 1, 2007 (Overt Acts ¶ 2).

**Peggy Shambaugh**

The last defendant – Peggy Anne Shambaugh – is initially identified in the indictment as Kovall's "co-habitant, girlfriend, fiancée, or wife" (¶ 7), but the indictment later concedes that she is a real estate agent (¶ 22(b)).

**The Transactions Charged In The Indictment**

The conspiracy count (count 1) of the indictment describes seven transactions connected to alleged improper payments—six construction projects by Cadmus[5] and the oversight of construction projects by Bardos.  For one of the seven transactions, the indictment asserts that Bardos or Cadmus performed work (directly or through a subcontractor) "for the Tribe" (Overt Acts ¶ 3) and in all or most of the transactions the indictment asserts that Bardos received money "from the Tribe" (Overt Acts ¶¶ 6, 10, 13, 15, and 17).  The indictment then alleges that, after he received payments, Bardos paid money to Heslop and Heslop thereafter paid money to Shambaugh (Overt Acts ¶¶ 6, 10, 13, 15, and 17).

In addition to the conspiracy count against all four defendants, Bardos is charged with eight counts (counts 2-9) of violating § 666 for paying money to Heslop in order to influence Kovall and Heslop "in connection with a transaction … of the Tribe …, namely the awarding of the Tribe's construction-related contracts" (¶ 14).

Heslop is charged with eight counts (counts 10-17) of violating § 666 for having *accepted* the eight checks from Bardos to be influenced and rewarded in connection with the "Tribe's construction-related contracts" (¶ 16).  There is no allegation that

---

[5]  The Overt Acts, which allege that the Tribe was the entity involved in the transactions underlying the § 666 counts, do not identify the payor or payee of the checks listed, unlike the substantive counts where individual checks are identified by payor and payee.  The Overt Acts state only that "Bardos received" specific checks "from the Tribe" (*e.g.*, ¶ 11(6)(1)).  Counts 36, 38, 40, 43, 45, 46, 49, and 51 state that the checks were payable to Cadmus Construction.  The checks themselves make clear that the Tribe issued none of the checks; every check referred to in the Overt Acts was issued and paid by EC.  (RJN Exs. 3-24)  The one wire transaction referred to in the indictment (in count 33) was sent by ETH.  (RJN Ex. 25)

DEF. HESLOP'S MOTION TO DISMISS
                                              Case No.: CR-12-441(A)-MWF

Heslop influenced the Tribe in awarding those contracts.  Heslop is charged with seven counts (counts 18-24) of violating § 666 for having *given* seven checks to Shambaugh in order to reward Kovall in connection with the "Tribe's construction-related contracts" (¶18).

Shambaugh is charged with seven counts (counts 25-31) of having received checks for, and aided and abetted their receipt by, Kovall, that Heslop gave her (¶ 20).

The fraud count (solely against Kovall) alleges that the Tribe "authorized" Heslop to purchase a 47-acre parcel of land "on behalf of ETH"; Shambaugh's real estate agency was paid a commission on the sale; the Tribe "authorized" Heslop to increase ETH's offer in order to pay a "significant commission" to Shambaugh; ETH then purchased the property "on behalf of the Tribe"; and Kovall failed to disclose his "adverse interest" (that is, his personal relationship with Shambaugh, the real estate agent) (¶ 24).  Shambaugh is alleged to have violated § 666 in connection with the 47-acre purchase by paying Heslop $10,000 after receiving her commission; Heslop is charged with violating § 666 for having received the $10,000 (¶¶ 26-29) (count 35).  There is no allegation that Heslop influenced the Tribe when it decided to retain Shambaugh as its real estate broker for the transaction.

In the money laundering counts, the indictment lists some of the checks listed in the Overt Acts section of the conspiracy count.  It alleges that Bardos, Heslop and Shambaugh conducted an illegal financial transaction each time a check was deposited in a bank (counts 36-52).  The unlawful activity underlying each count is alleged to be a violation of California's commercial bribery statute (Cal. Penal Code § 641.3), which makes it a felony for "any employee" to accept money from a third person, with a corrupt intent "and without the knowledge or consent of the employer" in return for benefitting the third person.  The counts do not incorporate any prior paragraphs of the indictment and contain no particulars, only the details of a check deposit and who is accused of conducting a monetary transaction (¶ 30).

### The Checks Alleged in the Indictment

DEF. HESLOP'S MOTION TO DISMISS
Case No.: CR-12-441(A)-MWF

One critical element of § 666 is that the defendant gave or received anything of value to influence or be influenced in connection with a "business, transaction, or series of transactions of such [Indian tribal] government." Here, the indictment identifies the relevant transactions as payments to Bardos or Cadmus, as reflected in checks listed throughout the indictment, purportedly "from the Tribe" (*e.g.*, ¶¶ 6(2), 10(1), 13(1), 15(1), 17(1)). However, there can be no dispute that the checks identified in counts 1 through 31 were either issued, or originated from funds paid, by EC. There can also be no dispute that the wire transfer and funds for counts 33-35 were initiated or originated from funds paid by ETH. (RJN Exs. 3-25)

## JURISDICTION

The indictment asserts that the United States Environmental Protection Agency (the "EPA") provided the Tribe with "hundreds of thousands" of dollars on "an annual basis" and "disbursed" monies "throughout the year" (¶ 8).[6] The indictment later asserts that the Tribe "was a tribal government that received" more than $10,000 between May 9, 2007 and May 8, 2008 (¶ 13).

Significantly, the indictment nowhere asserts that the United States EPA provided EC or ETH with any funds. EC paid Bardos and/or his construction company for the transactions alleged in the indictment, and ETH provided the funds for the 47-acre deal.

## ARGUMENT

## POINT ONE
## SECTION 666 REQUIRES THAT AN ALLEGED IMPROPER PAYMENT BE MADE IN CONNECTION WITH A TRANSACTION OF THE TRIBAL GOVERNMENT RECEIVING FEDERAL FUNDS

Section 666 (as applicable here) prohibits *agents of an Indian tribal government* from taking things of value to be influenced or rewarded "in connection with" any

---

[6] The Tribe's website states as follows: "The Twenty-Nine Palms Band of Mission Indians, in partnership with the U.S. Environmental Protection Agency, has successfully created and sustained a Tribal Environmental Protection Agency and laboratory program since 1997." http://29palmstribe.com/tirbalepa.html.

DEF. HESLOP'S MOTION TO DISMISS
Case No.: CR-12-441(A)-MWF

transaction of $5000 or more *of the tribal government*, if the tribal government has received $10,000 or more in a one-year period.  18 U.S.C. § 666(a)(1)(B).  It also prohibits people from corruptly giving things of value to any person to influence or reward an agent of an Indian tribal government  "in connection with" any transaction of $5000 or more *of the tribal government*, if the tribal government has received $10,000 or more in a one-year period.  *Id*. § 666(a)(2).  An Indian tribal government includes a subdivision of the government and "a corporation or other legal entity established, and subject to control, by a government or governments *for the execution of a governmental or intergovernmental program*."  *Id*. § 666(d)(2).

In *United States v. Wyncoop*, 11 F.3d 119 (9th Cir. 1993), the Ninth Circuit reversed the conviction of a defendant who embezzled money from a private technical school that received no federal funds, but which benefited from the federal government's student loan programs by receiving tuition payments from the government.  The students were the direct beneficiaries of the federal loans; the college was an indirect beneficiary because of the "added pool of students who otherwise would not be able to afford the education."  *Id*. at 121.  The court reasoned as follows:  "[W]e conclude that Congress' intent was to bring conduct that could have an effect *on the administration or integrity of federal funds within the ambit of federal criminal law*.  Congress did not intend . . . to make misappropriations of money from every organization that receives *indirect* benefits from a federal program a federal crime" (first emphasis added; second in original).  *Id*.  The indirect benefit that the college received from the federal program was insufficient to establish federal jurisdiction: "the statute was not intended to cover thefts from institutions like Trend College that do not themselves receive and administer federal funds."  *Id*.  at 122.  *See United States v. Whitfield*, 590 F.3d 325, 345-46 (5th Cir. 2009) (judges, who were agents of the Mississippi Administrative Office of the Courts (AOC) and who corruptly accepted money from attorneys to influence cases, could not be convicted of violation § 666 because the funds they received "had nothing to do with a transaction

of the AOC") (citing and discussing *United States v. Frega*, 933 F. Supp. 1536 (S.D.Cal.1996), *aff'd in part, rev'd in part on other grounds*, 179 F.3d 793 (9th Cir.1999)).

Pursuant to the plain language of § 666 and *Wyncoop*, there is no federal jurisdiction (and no federal crime) if the transaction at issue was conducted by an entity other than the tribal government that received federal money.  In other words, there is no jurisdiction unless the allegedly improper payments are made "in connection with" a transaction "of such … Indian tribal government."  18 U.S.C. § 666(a)(1)(B), (a)(2).

## POINT TWO
## RULE 12 AUTHORIZES A HEARING WITH EVIDENCE ON THIS MOTION

Rule 12 authorizes a defendant to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue." Fed. R. Crim. P. 12.  While a Rule 12(b) motion may be raised at any time, *United States v. Smith*, 866 F.2d 1092 (9th Cir. 1987), Heslop raises them now before a costly trial.  When a defendant moves to dismiss before trial, the indictment is subject to an exacting review and may not be liberally construed in favor of validity.  *See United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) ("The timing of the defendant's objection is important to the level of scrutiny employed; a defendant who objects to the indictment before trial, as Pirro has done, is entitled to a more exacting review of the indictment than one who waits until after trial to object."); *United States v. Pheaster*, 544 F.2d 353, 361 (9th Cir. 1976).

If an undisputed issue of fact would dispose of the case, then the Court may consider the evidence and grant a motion to dismiss.  In *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (internal quotation marks and citations deleted), the Ninth Circuit held as follows:

[A] district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on

1   the motion do not invade the province of the ultimate finder of fact. . . .  As the

2   ultimate finder of fact is concerned with the general issue of guilt, a motion

3   requiring factual determinations may be decided before trial if trial of the facts

4   surrounding the commission of the alleged offense would be of no assistance in

5   determining the validity of the defense. . . .

6   Under this standard, the district court must decide the issue raised in the pretrial

7   motion before trial if it is entirely segregable from the evidence to be presented

8   at trial.

9   *See United States v. Jenkins*, 490 F.2d 868 (2d Cir. 1973) (district court heard evidence

10  and then dismissed indictment because it did not state an offense); *United States v.*

11  *Levin*, 973 F.2d 463, 467 (6th Cir. 1992) ("Rule 12 . . . encourage[s] district courts to

12  entertain and dispose of pretrial criminal motions before trial if they are capable of

13  determination without trial of the general issues. . . [and] district courts may make

14  preliminary findings of fact necessary to decide questions of law presented by pretrial

15  motions so long as the trial court's conclusions do not invade the province of the

16  ultimate finder of fact."); *United States v. Covington*, 395 U.S. 57, 60, 89 S. Ct. 1559,

17  23 L. Ed. 2d 94 (1969) (Rule 12(b)(4) "permits factual hearings prior to trial if

18  necessary to resolve issues of fact peculiar to the motion").

19      Part of the fact finding by this Court may include taking judicial notice of the

20  actual documents referred to in the indictment, pursuant to Federal Rule of Evidence

21  201, because those documents relate to whether this Court has jurisdiction over the §

22  666 counts and not to guilt or innocence.  In *United States v. Dransfield*, 913 F. Supp.

23  702, 707 (E.D.N.Y. 1996), the court held that it could determine, before trial and with

24  evidence, whether the entity that entered into the transactions giving rise to the § 666

25  charges "received federal assistance in excess of $10,000 in a one-year period."  That

26  question "goes to whether § 666 applies to the Defendants' alleged criminal conduct,

27  not to the issue of the Defendants' guilt or innocence. … Therefore, the Court finds

28  that it may properly decide the jurisdiction question on Defendants' pre-trial motion to

1  dismiss pursuant to Rule 12(b)."  *See United States v. Gen. Dynamics Corp.*, 644 F.
2  Supp. 1497, 1499-500 (C.D. Cal. 1986) *rev'd on other grounds,* 828 F.2d 1356 (9th
3  Cir. 1987) ("judges should be able to and can consider matters which are the subject of
4  judicial notice in the context of the particular case … In the case at hand, the Contract
5  is the very subject of the indictment."); *United States v. Briddle*, 212 F. Supp. 584, 589
6  (S.D. Cal. 1962) ("This Court has the power to receive evidence—including evidence
7  adduced by means of judicial notice—upon the hearing of the defendants' motions to
8  dismiss the indictment at bar.").

**POINT THREE**
**THE TRANSACTIONS THAT UNDERLIE THE CHARGES AGAINST**
**HESLOP FOR VIOLATING SECTION 666 WERE NOT TRANSACTIONS**
**WITH THE ENTITY THAT RECEIVED FEDERAL FUNDS**

Here, the indisputable evidence shows that the entities involved in the charged
transactions were not a tribal government, but rather were distinct corporate entities,
EC and ETH, and neither is alleged to have received federal money.  Every
*transaction* alleged in the indictment that gave rise to an alleged § 666 violation
involved a transaction between a corporation separate and distinct from the tribal
government that received federal funds.  EC, and not the tribal government, issued
every check to Cadmus for construction or oversight.  Similarly, the transaction
involving the 47-acre parcel purchase was between the seller of the property and ETH,
a California limited liability corporation.

EC and ETH are legally distinct from the Tribe.  EC is a Section 17 corporation.
Section 17 was adopted to give "tribes the power to incorporate [] in part to enable
tribes to waive sovereign immunity, thereby facilitating business transactions and
fostering tribal economic development and independence."  *Am. Vantage Companies,
Inc. v. Table Mountain Rancheria*, 292 F.3d 1091, 1098-99 (9th Cir. 2002); *see
Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 157, 93 S. Ct. 1267, 36 L. Ed. 2d 114
(1973) (the purpose of the Act was to "encourage tribal enterprises to enter into the

DEF. HESLOP'S MOTION TO DISMISS
Case No.: CR-12-441(A)-MWF

white world on a footing of equal competition"); *Parker Drilling Co. v. Metlakatla Indian Cmty.,* 451 F. Supp. 1127, 1131 (D. Alaska 1978) (observing that Congress enacted section 17 "[r]ecognizing that the protection of sovereign immunity would put the Indian tribe at a competitive disadvantage in obtaining credit and entering into business transactions")).  "Because 'developers and lenders will be reluctant to deal with a corporation which is legally irresponsible and cannot be made to answer for its debts,' … tribes can compete fully in the business world only if they voluntarily agree to limit their right to immunity."  *Marceau v. Blackfeet Hous. Auth.*, 455 F.3d 974, 982-83 (9th Cir. 2006) *opinion adopted in part, modified in part on reh'g,* 519 F.3d 838 (9th Cir. 2008) *opinion amended and superseded on denial of reh'g,* 540 F.3d 916 (9th Cir. 2008) and *opinion reinstated in part, superseded in part,* 540 F.3d 916 (9th Cir. 2008).

ETH is a California limited liability company, and both by virtue of law and its Operating Agreement is legally distinct from the tribe.  There is nothing about its formation to suggest that it is anything other than a California limited liability company, a distinct corporate entity, with no connection to the Tribe other than that the Tribe is its member.  (RJN Ex. 2 at 1 (directing the formation of a "limited liability company … subject to the provisions of the Beverly-Killea Limited Company Act of California").)

The charges alleging that Heslop was an agent and corruptly accepted payments to influence the Tribe do not allege a violation of § 666 because the payments were "in connection with" transactions between EC and Cadmus (counts 10-17) and between ETH and the seller of the 47-acre parcel (count 35).  Neither EC nor ETH is alleged to have received federal money, and the tribal government did not pay for any of the "construction-related" work.  Similarly, counts 18-24, which allege Heslop paid Kovall (an alleged agent of the Tribe) to influence the Tribe do not allege a § 666 violation because Cadmus entered into transactions with, and was paid by, EC, which

did not receive federal funds. The tribal government that allegedly received the federal funds did not pay for that work.

*Wyncoop* dictates that the § 666 counts (and the conspiracy count) must be dismissed because, as in that case, here the business transactions by EC and ETH could have no "effect on the administration or integrity of federal funds" contributed by the federal government to the tribal EPA.  The alleged improper payments here ("misappropriations of money" in *Wyncoop*) were paid out of money that EC and ETH spent on business transactions.  Even if the government could prove that EC and ETH benefited from the US EPA's grant (although the indictment contains no such allegations), such a benefit would be no different from the indirect benefits in *Wyncoop* that the court held did not state a federal crime.

EC and ETH also cannot be considered an agency of the Tribal government for purposes of § 666.  Corporations owned or controlled by tribal governments may only be considered tribal governments if they were "established, and subject to control, by a government or governments for *the execution of a governmental or intergovernmental program*."  18 U.S.C. § 666(d)(2) (emphasis added).  There is no allegation that EC was created or controlled in order to execute government functions.  In fact, the indictment alleges the opposite:  it was created and controlled to run a gambling casino, which is not a tribal government's "program" or function.  *See San Manuel Indian Bingo & Casino v. N.L.R.B.*, 475 F.3d 1306, 1315 (D.C. Cir. 2007) ("First, operation of a casino is not a traditional attribute of self-government. Rather, the casino at issue here is virtually identical to scores of purely commercial casinos across the country.  Second, the vast majority of the Casino's employees and customers are not members of the Tribe, and they live off the reservation. For these reasons, the Tribe is not simply engaged in internal governance of its territory and members, and its sovereignty over such matters is not called into question."); *Chao v. Spokane Tribe of Indians*, 2008 WL 4443821 at *4 (W.D. Wash. Sept. 24, 2008) ("the Court finds the Casino does not serve a governmental role or function"); *Bolssen v.*

*Unum Life Ins. Co. of America*, 629 F. Supp. 2d 878 (E.D. Wisc. 2009) (Indian casino's employee benefit plan deemed covered by ERISA application because operation of a casino is not a traditional attribute of self-government, but rather is identical to commercial casinos across the country); *Reich v. Mashantucket Sand & Gravel*, 95 F.3d 174, 180 (2d Cir. 1996) (holding that a tribe's wholly owned construction business, working as an arm of a tribe, is not immune from regulation under OSHA: "That an entity is owned by a tribe, operates as an arm of a tribe, or takes direction from a tribal council, does not ipso facto elevate it to the status of a tribal government.").

The United States government itself has taken the position that Indian gaming casinos are not "essential governmental functions," and thus cannot be financed by tax-advantaged bonds, *see* 26 USC § 7871(e) (essential government functions subject to tax-free financing must be functions that are "customarily performed by State and local governments with general taxing powers") and § 7871(f)(3)(B)(i) (tribal economic development bonds do not include bonds issued to finance "any portion of a building in which class II or class III gaming (as defined in section 4 of the Indian Gaming Regulatory Act) is conducted or housed or any other property actually used in the conduct of such gaming").

Purchasing land through a limited liability corporation formed under California state law is similarly not a government "program"; it is a business venture. *See Somerlott v. Cherokee Nation Distributors, Inc.*, 686 F.3d 1144, 1149-50 (10th Cir. 2012) ("the subordinate economic entity test [to determine if a tribe-owned corporation may assert sovereign immunity] is inapplicable to entities which are legally distinct from their members and which voluntarily subject themselves to the authority of another sovereign which allows them to be sued …. For example, when the United States formed and became the sole shareholder of the Panama Railroad Company, a New York corporation, courts held the corporation was distinct from the United States and did not share its immunity."); *Seaport Loan Prods., LLC v. Lower*

*Brule Cmty. Dev. Enter. LLC*, 41 Misc. 3d 1218(A) (N.Y. Sup. Ct. 2013) ("LBCDE was formed in 2009 by its parent company, LBC, itself a federally-chartered company, pursuant to Delaware's Limited Liability Company Act, Del. Code 6 § 18–101 *et seq.*  These factors cut decisively in favor of a finding that LBCDE is not an arm of the Tribe."); Cal. Corp. Code § 17701.04 ("A limited liability company is an entity distinct from its members"); Cal. Corp. Code § 17701.05 (California Limited Liability companies have the power to "sue, be sued").

   As this Court noted in its previous order, there is no allegation that ETH was a branch of the tribal government or was created to execute a governmental program. (Order, Doc. 115 at 5)  Nor is there any such allegation regarding EC.  At a minimum, the rule of lenity dictates against construing § 666 to cover every independent contractor, real estate agent, and employee of every federal or state corporation set up by a tribe to conduct commercial business.  "[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."  *Cleveland v. United States*, 531 U.S. 12, 25, 121 S. Ct. 365, 148 L. Ed. 2d 221 (2000).  "The purpose of the statute is to 'protect federal funds by preserving the integrity of the entities that receive the federal funds.'" *United States v. Garrido*, 713 F.3d 985, 999 (9th Cir. 2013) (citations omitted).

   Section 666 was not adopted to protect every alleged commercial bribe or defalcation by employees of privately corporations.  As the Department of Justice itself recognizes, "A narrower reading [of § 666], consistent with the stated congressional intent, requires that the agent must have illegally obtained cash or property from the agency that received the necessary Federal assistance.  This narrower reading is strongly suggested in order to ensure that significant Federal interests are protected and the clear intent of Congress is followed."  U.S. Attorney's Manual, Title 9, Criminal Resources Manual at 1001, http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/crm01001.htm. *See also United States v. Lanier*, 520 U.S. 259, 266 117 S. Ct. 1219, 137 L. Ed. 2d

1   432 (1997) (three manifestations of the rule of lenity:  vagueness doctrine bars

2   enforcement of a statute that forbids conduct in vague terms; criminal statutes must be

3   strictly construed; and due process bars courts from applying novel constructions to a

4   criminal statute that neither the statute nor prior judicial decisions have disclosed).

5   No § 666 violation (or conspiracy) has been stated, and this Court therefore has

6   no jurisdiction.

### POINT FOUR
### THE INDICTMENT FAILS TO ALLEGE A CONNECTION BETWEEN HESLOP'S ALLEGED INFLUENCE AND ANY ALLEGED IMPROPER PAYMENT

10   The indictment is defective because the only "influence" Heslop is accused of

11   having exerted over the Tribe is his "recommendation" that the Tribe retain Bardos as

12   an "owner's representative."  The indictment fails to allege that Heslop was bribed or

13   rewarded in any way for making this "recommendation."[7]  It alleges that Bardos

14   received money as an owner's representative (Overt Acts ¶¶ 1-2), but it does not allege

15   that Bardos paid any money (let alone any money received as an owner's

16   representative) to Heslop for Heslop's supposed influence.  Instead, the indictment

17   alleges, with respect to almost all of the construction-related contracts[8] that Kovall

18   recommended Bardos as the contractor for construction-related contracts.  (Overt Acts

19   ¶¶ 4 (Kovall "persuaded" Tribe on parking lot construction), 8 (Kovall "persuaded"

20   Tribe on disking of land), 12 (Kovall "advised" Tribe on co-generation plant), and 16

---

21
22   [7]  The grand jury also clearly did not indict Heslop for a violation of § 666 because it found only that he recommended Bardos, not that he influenced the Tribe to hire Bardos.  "Recommend"
23   means "to present as worthy of acceptance or trial," http://www.merriam-webster.com/dictionary/recommend, while "influence" means "the power to change or affect
24   someone or something : the power to cause changes without directly forcing them to happen," http://www.merriam-webster.com/dictionary/influence.  The government may not choose a word
25   different from the statute's element to satisfy that element. The use of the word "influence" in the boilerplate language for counts 10-17 and 35 does not cure the defect in the indictment's factual
26   allegations.
27   [8]  The indictment does not allege that Kovall or Heslop influenced the Tribe in hiring Bardos to purchase granite.  (Overt Acts ¶ 14)  The granite purchase allegations are thus devoid of any
28   assertion that anyone other than Bardos – a general contractor offering to buy granite – "influenced" the Tribe in choosing Bardos as the granite source.

1   (Kovall "continued to recommend" and "persuaded" Tribe on casino bathroom

2   construction, building shell, and casino addition))  It nowhere accuses Heslop of

3   having influenced the Tribe to retain Bardos on any of those construction-related

4   contracts.  It also does not allege that Heslop influenced the Tribe to retain Shambaugh

5   as its real estate agent; it only contends that Kovall "convinced" the Tribe to increase

6   its offer in order to pay Shambaugh's commission (¶ 24(c)).

7       The checks Heslop is alleged to have received as rewards for supposedly

8   influencing the Tribe all relate solely to payments under the construction-related

9   contracts that Kovall is accused of having influenced—not Heslop.  (Overt Acts ¶¶ 6

10  (checks for parking lot), 10 (checks for disking), 13 (checks for construction

11  oversight), 15 (checks for granite purchase), and 17 (checks for bathroom remodel).

12  As to the 47-acre deal, Heslop is not accused of having influenced the Tribe to hire

13  Shambaugh.  Thus, his receipt of money from Shambaugh after the transaction cannot

14  be in connection with any alleged improper influence.

15      In short, counts 1, 10-17 and 35 fail to allege a crime because § 666 only

16  prohibits an agent of a tribal government from accepting or soliciting money to be

17  influenced "in connection with" a business, transaction or series of transactions of the

18  tribal government.  There must be a nexus between the influence and the payment.  *See*

19  *Whitfield*, *supra*, 590 F.3d at 345-46 (the alleged bribe or reward under § 666 must

20  relate to the improperly influenced transaction).  Heslop is only alleged to have

21  "influenced" the Tribe to hire Bardos as an owner's representative (by

22  "recommending" him), with no concomitant payment.  The payments Bardos and

23  Shambaugh are alleged to have made to Heslop relate solely to contracts that Heslop is

24  not accused of having influenced.  Thus, the counts charging Heslop with taking

25  money to influence the Tribe in his role as an alleged agent must be dismissed.

26                          **POINT FIVE**
27      **THE INDICTMENT FAILS TO ALLEGE THAT HESLOP**
          **WAS AN AGENT OF THE TRIBAL GOVERNMENT**
28

The indictment alleges that Heslop was an agent of ETH, citing to powers conferred on him by ETH, an entity legally distinct from the Tribe formed to purchase real estate.  Each power enumerated in the indictment was a power conferred on Heslop by the ETH Operating Agreement.  Each of those powers related solely to ETH and not the tribal government.  That Operating Agreement also limited Heslop's ability to act to bind ETH to transactions of no more than $1000.  *See* Civ. Code § 2316 (actual authority of an agent "is such as a principal intentionally confers upon the agent"); *Flores v. Evergreen at San Diego, LLC*, 148 Cal. App. 4th 581, 588 (2007) ("*conduct by the principal* is essential to create the agency") (emphasis in original).  The indictment thus contains no allegation other than that Heslop was an agent of a limited liability corporation owned by the Tribe who could buy office supplies, for example, and not real estate – unless parcels of land sold for $1000 or less.  The ability to spend up to $1000 for a private corporation whose sole purpose was to purchase real estate did not convert Heslop into someone who could effect significant transactions without express authorization.  *See United States v. Westmoreland*, 841 F.2d 572, 578 (5th Cir. 1988) ("the statute does not encompass every local bribery as Westmoreland suggests. Although the extent of the federal government's assistance programs will bring many organizations and agencies within the statute's scope, the statute limits its reach to entities that receive a substantial amount of federal funds and to agents who have the authority to effect significant transactions."); *Frega*, *supra,* 933 F. Supp. at 1540 (S.D. Cal. 1996) (explaining legislative history and reach of § 666:  "the Court concludes that the legislative history of § 666 demonstrates that Congress intended a broad reach for the statute, but only as to the protection of federal funds.").

When the ETH "powers" listed in the indictment are properly put to one side, the indictment contains no specific allegations that Heslop was an agent of the Tribe.  Yet, Rule 7(c) of the Federal Rules of Criminal Procedure requires that the "indictment . . . must be a plain, concise, and definite written statement of the

19                    DEF. HESLOP'S MOTION TO DISMISS

1   essential facts constituting the offense charged. . . .  For each count, the indictment . . .

2   must give the official or customary citation of the statute, rule, regulation, or other

3   provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c).

4       Rule 7 imposes "two requirements [: ]the statement of the essential facts *and* the

5   citation of the statute. *They are separate requirements and not a restatement of one*

6   *another, . . .*";  and it has long been the rule in this Circuit that a deficiency in an

7   indictment's factual allegations of the elements of an offense is not cured by the fact

8   that the relevant count "cited the statute that [the defendant] is alleged to have

9   violated []." *United States v. Gonzalez*, 686 F.3d 122, 128 (2d Cir. 2012) (quotation

10  marks and citations omitted) (reversing mandatory minimum drug sentence where

11  indictment failed to specify drug quantity in written statement and despite citation to

12  statute).  While the language of a statute may be used in the general description of an

13  offense, it must be accompanied by "such a statement of facts and circumstances as

14  will inform the accused of the specific offense, coming under the general description,

15  with which he is charged." *United States v. Shipsey*, 190 F.3d 1081, 1086-87 (9th Cir.

16  1999) (quoting *United States v. Cecil,* 608 F.2d 1294, 296 (9th Cir.1979)).

17      In addition to Rule 7's requirements, the Fifth and Sixth Amendments demand

18  that a person accused of a crime "be informed of the nature and cause of the

19  accusation …." *Russell v. United States*, 369 U.S. 749, 760-61, 82 S. Ct. 1038, 8 L.

20  Ed. 2d 240 (1962).  In *Russell*, the Supreme Court held that an indictment is sufficient

21  only if it "contains the elements of the offense intended to be charged, 'and

22  sufficiently apprises the defendant of what he must be prepared to meet.'" *Id.* at 763-

23  64 (citations omitted).  "The failure of an indictment to detail each element of the

24  charged offense generally constitutes a fatal defect." *United States v. Keith*, 605 F.2d

25  462, 464 (9th Cir. 1979) (failure to allege elements results in reversal of conviction).

26      If indictments that did not specifically allege wrongdoing were permitted, "a

27  defendant could be convicted on the basis of facts not found by, and perhaps not even

28  presented to, the grand jury that indicted him." *Russell*, 369 U.S. at 770.

1

2

3

4

5

> To allow a prosecutor or court to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection that the grand jury was designed to secure, because a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury that indicted him.

6

7

8

9

10

11

12

*Keith*, 605 F.2d at 464. *See United States v. Hess*, 124 U.S. 483, 486, 8 S. Ct. 571, 31 L. Ed. 516 (1888) ("The general . . . rule . . . is that all the material facts and circumstances embraced in the definition of the offense must be stated, or the indictment will be defective.  No essential element of the crime can be omitted without destroying the whole pleading.  The omission cannot be supplied by intendment or implication, and the charge must be made directly, and not inferentially, or by way of recital.").

13

14

15

16

17

18

19

20

21

22

23

24

25

In denying the prior motion to dismiss, this Court ruled that, "practically speaking," the indictment alleges that Heslop was an agent for the Tribe because he had powers to manage assets, borrow money, sign contracts and employ individuals (Order at 5; Indictment ¶¶ 3,5).  But the Court did not have the benefit of seeing the ETH Operating Agreement, which is the document that the indictment claims gave Heslop those powers (limited to $1000) solely for ETH – a separate corporation from the Tribe; a corporation that receives no federal money; and one which was created to buy real estate (¶ 3 "created … to purchase real estate").  The government may not bootstrap a claim that people employed by ETH (or every employee of the Casino employed through EC) are the Tribe's agents.  *See Somerlott*, supra, 686 F.3d at 1150 (a limited liability corporation created by an Indian tribe under state law is a separate legal entity not entitled to the benefit of sovereign immunity, even though owned by a tribe).

26

27

28

Nor does the allegation in the indictment that "the Tribe" paid Heslop to manage ETH (¶ 5) change the analysis.  Paying someone to work for another company does not create an agency relationship between the payor and the payee.  Moreover, the

DEF. HESLOP'S MOTION TO DISMISS
Case No.: CR-12-441(A)-MWF

Tribe did not pay Heslop; ETH did.  (RJN Ex. 26)  The indictment does not allege a single fact that suggests Heslop was an agent of anything other than ETH, and the grand jury saw and heard no evidence that Heslop was an agent for anything other than ETH.  The indictment is, therefore, fatally defective for failing to allege any facts or particulars that Heslop was an agent of the Tribe with respect to counts 10-17.

### POINT SIX
### THE MONEY LAUNDERING COUNTS MERGE INTO THE UNDERLYING STATE OFFENSE AND FAIL TO ESTABLISH FEDERAL JURISDICTION

The money laundering counts against Heslop must be dismissed because they fail to state a federal offense and lack particulars.

Section 1957 makes it a crime to engage in a monetary transaction in criminally derived property with a value greater than $10,000 that is derived from specified unlawful activity.  "Criminally derived property" is defined as "proceeds obtained from a criminal offense."  18 U.S.C. § 1957(a), (f)(2).  "Specified unlawful activity" includes RICO predicates, such as bribery.  18 U.S.C. §§ 1956(c)(7) and 1961(1).  Heslop is charged with having received bribes in violation of California state law (commercial bribery) on several occasions and depositing those bribes in his bank account.

The reach of the money laundering statutes (as in effect during the time relevant to this case) were limited by the Supreme Court in *United States v. Santos*, 553 U.S. 507, 128 S. Ct. 2020, 170 L. Ed. 2d 912 (2008).  Santos was convicted of operating an illegal gambling business in violation of 18 U.S.C. §§ 371 and 1955 and money laundering in violation of 18 U.S.C. § 1956.  He argued that "proceeds" in § 1956 refers only to criminal profits and not to criminal receipts.  The Supreme Court agreed, affirming the lower courts' rulings that the money laundering convictions should be vacated because they represented Santos's receipts from the gambling business (and payments to his employees) and those receipts did not represent profits. The Supreme Court explained that, in situations like the one before it, the money

DEF. HESLOP'S MOTION TO DISMISS
Case No.: CR-12-441(A)-MWF

laundering offense "merged" with the underlying offense and thus could not properly be charged as a separate offense.  *See Santos*, 553 U.S. at 515 (explaining that if "proceeds" meant "receipts" then every violation of a lottery statute would constitute a federal money laundering offense, despite the significant differences in potential sentences); *id* at 515-16 ("any wealth-acquiring crime with multiple participants would become money laundering when the initial recipient of the wealth gives his confederates their shares"); *id* at 529 (dissenting opinion) (Justice Department and Sentencing Commission agreed that money laundering cannot properly be charged for merged transactions).

     *Santos* was a plurality decision, but there was one principle that every Justice agreed on:  the money laundering statutes should not be used to "radically increase the sentence" for a different crime.  *Id*. at 518 (Scalia, J.); *see id* at 527 ("Allowing the Government to treat the mere payment of the expense of operating an illegal gambling business as a separate offense is in practical effect tantamount to double jeopardy, which is particularly unfair in this case because the penalties for money laundering are substantially more severe than those for the underlying offense of operating a gambling business.") (Stevens, J. concurring); *id*. at 528 ("If the money laundering statute applies to this kind of transaction (*i.e.,* if the transaction is automatically a 'financial transaction' that 'involves the proceeds of specified unlawful activity' made 'with the intent to promote the carrying on of specified unlawful activity'), then the Government can seek a heavier money laundering penalty (say, 20 years), even though the only conduct at issue is conduct that warranted a lighter penalty (say, 5 years for illegal gambling).") (Breyer, J. dissenting); *id*. at 547 ("I agree with Justice BREYER ... that if a defendant is convicted of money laundering for doing no more than is required for a violation of [the federal gambling statute], the defendant's sentence should be no higher than it would have been if the defendant had violated only that latter provision.") (Alito, J. dissenting).

The *Santos* decision triggered in depth analyses in subsequent opinions, including those in the Ninth Circuit.  *See, e.g., United States v. Van Alstyne*, 584 F.3d 803, 813-14 (9th Cir. 2009) (reversing money laundering convictions based on *Santos* where defendant distributed proceeds of a Ponzi scheme to prior investors); *United States v. Bush*, 626 F.3d 527, 537 (9th Cir. 2010) (holding that *Santos* applied to § 1957 charges because the import of *Santos* was "its requirement that a court evaluate whether the government has been redundant in its prosecution of a fraudulent scheme—that is, whether the charges separate necessary parts of the whole and treat them as independent bases for criminal liability."); *United States v. Grasso*, 724 F.3d 1077, 1092-93 (9th Cir. 2013) (split decision in which the court identified three factors to determine whether a particular transaction violated the money laundering statute or whether the financial transaction merged into the substantive offense: (1) whether the transaction is a central component of the scheme; (2) whether the inclusion of the money laundering count "radically increased" the statutory maximum; and (3) whether the transaction involved a "co-conspirator transfer," which is considered "the 'proceeds' of such crimes for purposes of the money laundering statute").

Here, the indictment alleges that Heslop engaged in illegal money laundering transactions in connection with a violation of California's "commercial bribery" statute[9] by depositing the checks reflecting the unlawful activity.  There is no explanation of how the commercial bribery was accomplished; the § 1957 counts do not incorporate any prior paragraphs of the indictment.  There is no claim that Bardos and Heslop (or any of the other defendants) were acting as part of a conspiracy.

---

[9] *CrossTalk Prods., Inc. v. Jacobson*, 65 Cal. App. 4th 631, 643, 76 Cal. Rptr. 2d 615, 622 (1998) ("The commercial bribery statute provides that either (1) an 'employee' who solicits or receives money or anything of value (other than in trust for his 'employer'), 'corruptly' and in return for using his position to benefit another person, or (2) the person who offers or gives the 'employee' money or anything of value 'under those circumstances,' is guilty of commercial bribery. (*Ibid.*) 'Corruptly' is defined to mean the person 'specifically intends to injure or defraud' either his own employer, the employer of the person on the other side of the transaction, or a competitor of 'any such employer.' (*Id.*, subd. (d)(3).")

24                    DEF. HESLOP'S MOTION TO DISMISS
                      Case No.: CR-12-441(A)-MWF

Instead, the indictment baldly accuses Heslop of having received checks in violation of California's state commercial bribery law, which he deposited in his bank.

Those accusations run afoul of the merger rule announced in *Santos* and Heslop's constitutional right to fair notice of the crime with which he is charged. *Grasso*'s three factors demonstrate why the § 1957 counts merge into the state law: First, depositing the alleged bribe money is a (if not the) central component of bribery.  Second, the money laundering offense radically increases the statutory maximum prison sentence.  A violation of California Penal Code § 641.3 carries a maximum prison sentence of "two or three years" if the amount of the bribe is in excess of $10,000.  Cal. Penal Code § 641.3(c).  The § 1957 counts carry a maximum of 10 years (for a total maximum of 70 years for the seven counts with which Heslop is charged).  18 U.S.C. § 1957(b).[10]  Third, the financial transactions are not alleged to have involved co-conspirator transfers.  Instead, as charged in the indictment, each of the four defendants simply conducted a monetary transaction in "criminally derived property"; there is no claim that any defendant engaged in financial transactions with co-conspirators (¶ 30).

In any event, it is impossible to know from the indictment how the government claims the defendants committed a violation of California's commercial bribery law. That is a violation of Heslop's Rule 7 and constitutional right to know the particulars of the crime with which he is charged.  Instead, the indictment simply, and wrongly, transforms a state crime into a serious federal money laundering offense.

## CONCLUSION

Alan Heslop respectfully requests the Court dismiss the counts of the indictment alleged against him.

---

[10]  The Justice Department's Criminal Resources Manual acknowledges the enhanced sentences that people convicted of money laundering face:  "A conviction for money laundering may result in a much more severe sentence than a conviction based solely upon a mail or wire fraud. Consult the appropriate version of the United States Sentencing Guidelines Manual for the applicable offense levels. The government may also seek criminal or civil forfeiture under 18 U.S.C. §§ 981 and 982."  http://www.justice.gov/usao/eousa/foia_reading_room/usam/title9/crm00957.htm

DEF. HESLOP'S MOTION TO DISMISS
                                                Case No.: CR-12-441(A)-MWF

Dated:  January 6, 2014                          BOERSCH SHAPIRO LLP

                                                 __/s/ David W. Shapiro_____
                                                 David W. Shapiro
                                                 Attorney for David Alan Heslop